IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH,

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF NEVADA <u>ex rel.</u> MICHAEL D. KHOURY, M.D., <br><br> Plaintiffs, <br><br> v. <br><br> MOUNTAIN WEST ANESTHESIA, L.L.C.; DAVID A. DEBENHAM, M.D.; ERIC A. EVANS, M.D.; JOSHUA J. LARSON, M.D.; JOHN E. MINER, M.D.; TYLER W. NELSON, M.D.; and DOE ANESTHESIOLOGISTS 1 through 50, <br><br> Defendants. | **ORDER AND MEMORANDUM DECISION ON MOTIONS AND OBJECTIONS** <br><br> Case No. 2:20-cv-00372-TC-CMR <br><br> District Judge Tena Campbell <br> Magistrate Judge Cecilia M. Romero |

On December 6, 2023, United States Magistrate Judge Cecilia M. Romero issued an order 1) granting Relator Michael D. Khoury, M.D.'s second motion for an extension of time to complete fact discovery (ECF No. 125) and 2) granting in part Dr. Khoury's motion to compel documents (ECF No. 132). (<u>See</u> Mem. Decision & Order, ECF No. 165.) The parties filed timely objections to Judge Romero's order, <u>see</u> Fed. R. Civ. P. 72(a), and the Defendants filed a motion to stay Judge Romero's order, pending the court's resolution of the objections. The Defendants also filed a motion to reconsider this court's order granting Dr. Khoury's request for Rule 56(d) relief and denying without prejudice the Defendants' motion for summary judgment. (Mot. to Stay, ECF No. 172; Defendants' Obj., ECF No. 171; Dr. Khoury's Obj., ECF No. 169; Mot. for Recons., ECF No. 173). More recently, Dr. Khoury filed a motion for leave to file an amended complaint (ECF No. 192). For the reasons stated below, the court DENIES the Defendants' objection, SUSTAINS IN PART Dr. Khoury's objection, TERMINATES the Defendants' motion to stay as moot, DENIES the Defendants' motion to reconsider, and DENIES Dr. Khoury's motion for leave to file an amended complaint.

## BACKGROUND

Dr. Khoury brought this qui tam action on behalf of the United States alleging violations of the False Claims Act (31 U.S.C. § 3730(b)) and the Nevada False Claims Act (Nev. Rev. Stat. Ann. § 357.040). Dr. Khoury alleges that the Defendants have improperly billed the government for anesthesia services by falsely representing that the individual Defendants provided medical services that were "reasonable and necessary," even though they spent much of their operating room time distracted on their personal electronic devices (PEDs).

Dr. Khoury initially sued and asserted several causes of action against Defendants Intermountain Healthcare, Inc., IHC Services, Inc. (together, the IHC Defendants), Mountain West Anesthesia, LLC (Mountain West), and five anesthesiologists—Drs. David A. Debenham, Eric A. Evans, Joshua J. Larson, John E. Minor, and Tyler W. Nelson. (See Am. Complaint, ECF No. 52.) But the court narrowed Dr. Khoury's case in the early stages of the litigation. (See Mem. Decision & Order, ECF No. 89.)

In its order on the Defendants' motions to dismiss, the court held that Dr. Khoury failed to allege that the anesthesiologists made claims to the government that were factually false. (See id. at 10.) To be liable under the False Claims Act, a defendant must submit or cause to be submitted a "false or fraudulent claim" to the government. See 31 U.S.C. §§ 3729(a)(1)(A), (B). The Tenth Circuit has held that "false or fraudulent" includes factually false and legally false requests for payment. United States ex rel. Polukoff v. St. Mark's Hosp., 895 F.3d 730, 741 (10th Cir. 2018). "Factually false claims generally require a showing that the payee has submitted an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided." Id. (citation omitted). In its order, the court rejected all three of Dr. Khoury's factual falsity claims. First, the court held that the codes the

2

anesthesiologists used in the forms submitted to the government for reimbursement that expressly cover monitoring services were not false or fraudulent, as the anesthesiologists "monitored" the patients according to the relevant regulation.  (Id. at 12.[1])  Second, the court held that the anesthesiologists' reporting of anesthesia time was not false or fraudulent because the regulation concerning anesthesia time only contemplated an anesthesiologist's physical presence, not undivided attention.  (Id.)  Third, the court found that the anesthesiologists' use of personal performance modifier codes was not false or fraudulent; the codes apply when an anesthesiologist performs the entire service but do not consider distractions in the operating room.  (Id. at 14–15.)

The court also dismissed the IHC Defendants, finding that Dr. Khoury failed to allege that the IHC Defendants' hospital claims were not "reasonable and necessary" under 42 U.S.C. § 1395y(a)(1)(A).  (Id. at 17 n.9.)  Accordingly, Dr. Khoury's remaining claim is one of legal falsity against Mountain West and the individual Defendants.  "Claims arising from legally false requests … generally require[s] knowingly false certification of compliance with a regulation or contractual provision as a condition of payment."  Polukoff, 895 F.3d at 741.  Specifically, Dr. Khoury alleges that Mountain West and the individual Defendants have improperly billed the government for anesthesia services by falsely representing that they complied with the government's regulation and contractual provision that it will only pay for medical services that are "reasonable and necessary."  See 42 U.S.C. § 1395y(a)(1)(A).  Dr. Khoury's "core factual allegation … is that the Defendant Anesthesiologists spent the majority of their time in the operating room ignoring their patients and engrossed in their [PEDs,]" (ECF No. 52 at ¶ 152), services which are neither "reasonable" or "necessary."  In his proposed second amended

_____

[1] Record citations are to PDF pages rather than internal document pages.

complaint (ECF No. 185-1), Dr. Khoury alleges that, in addition to using their PEDs in the operating room, the individual Defendants left the operating room during surgeries where they were administering anesthesia.  (See ECF No. 185-1 at ¶ 152.)

Dr. Khoury's discovery motions, which Judge Romero's order resolved, concerned "the alleged refusal of Defendants to produce documents[.]"  (ECF No. 165 at 2.)  Dr. Khoury specifically sought data from the individual Defendants' PED devices (PED data).  In April 2023, the Defendants produced 14,000 pages of PED data that they converted from native format (Excel spreadsheets) to sets of .tiff images before producing the data to Dr. Khoury.  But Dr. Khoury argued that he was unable to use the data in a meaningful way and that the data provided was missing relevant information.  The court granted Dr. Khoury additional time to engage in discovery so that he could adequately respond to the Defendants' motion for summary judgment.  (See Order & Mem. Decision Granting Rule 56(d) Relief, ECF No. 166 at 3–5.)

In her order on Dr. Khoury's motions, Judge Romero ultimately found that Dr. Khoury met the good cause standard for an extension of time to complete fact discovery and that the requested information in Request for Production (RFP) Nos. 31 and 33—which included the PED data—was relevant and proportional to the needs of the case, with some exceptions.  (See ECF No. 165 at 7–8.)  At issue in Dr. Khoury's objection, Judge Romero found that the content of the communications Dr. Khoury sought from the Defendants' PED devices was not relevant or proportional.  (See id. at 9.)

## DISCUSSION

### I.    Party Objections to Judge Romero's Nondispositive Discovery Order

Federal Rule of Civil Procedure 72 governs objections to a magistrate judge's nondispositive pre-trial order.  The rule provides that a district judge "must consider timely

4

objections and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "The court must affirm [the order] unless it is 'left with the definite and firm conviction that a mistake has been committed.'" Montijo v. Intermountain Healthcare, Inc., No. 2:21-cv-00472, 2022 WL 558293, at *1 (D. Utah Feb. 24, 2022) (quoting Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1464 (10th Cir. 1988)).

Dr. Khoury partially objects to Judge Romero's order. (See ECF No. 169 at 1–2.) He objects only to Judge Romero's decision exempting the Defendants "from having to produce the content of emails and other communications, despite requiring Defendants to produce all other information … about these very same communications … even though there is no additional burden or expense to the Defendants in producing the content of the messages." (Id. at 2; see also Decl. Nicholas Marrero, ECF No. 170 at ¶ 5 ("[I]ncluding the content of communications like emails and text messages in the production of data has no additional marginal cost.").) Dr. Khoury maintains that he is entitled to the content of all communications, but argues that at a minimum, the court should modify Judge Romero's order to provide for a sampling of the content of the Defendants' communications. (ECF No. 169 at 13.)

The Defendants object to Judge Romero's order in its entirety. (ECF No. 171 at 4.) On the issue of extending discovery, the Defendants contend that Judge Romero's order "contains numerous factual errors as to the record before the [c]ourt[.]" (Id.) And on the issue of compelling the production of additional PED data, the Defendants assert that Judge Romero's order went beyond the scope of the motion itself[2] and that Judge Romero misapprehended the

---

[2] The order compelled the production of documents in response to RFP No. 31, which was not at issue in Dr. Khoury's motion to compel. (ECF No. 171 at 5.) Dr. Khoury has conceded that his motion did not seek a response to RFP No. 31. (See Resp. in Opp'n Defs.' Obj., ECF No. 180 at 13.) Accordingly, Dr. Khoury is not seeking to enforce the portion of Judge Romero's order

facts, which "led to the issuance of a vague and confusing order to produce additional PED data that has largely already been produced." (Id. at 5.)

In her order, Judge Romero applied two standards. She applied the good cause standard to resolve the motion to extend discovery. "Under that standard, the court may extend the time of an act that 'may or must be done within a specified time' upon a showing of good cause." (ECF No. 165 at 3 (quoting Fed. R. Civ. P. 6(b)(1)(A)).) To decide the motion to compel, she applied the standard set forth in Rule 26 of the Federal Rules of Civil Procedure: "Under Rule 26, '[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.'" (Id. at 4 (quoting Fed. R. Civ. P. 26(b)(1).)

### A. Motion to Extend Discovery

Judge Romero's conclusion that Dr. Khoury satisfied the good cause standard was not clearly erroneous or contrary to law. As Judge Romero indicated, "[c]entral to this request is Defendants' production of pertinent PED data in late April." (Id. at 5.) Though the Defendants ultimately produced a voluminous amount of PED data, the data they produced was unhelpful to Dr. Khoury. (See id.) The Defendants did not produce the data in native format, as requested, which prevented Dr. Khoury from easily manipulating, searching, and organizing the data. Because "it was not reasonable to expect that Relator could have done anything productive with 14,000 pages of unorganized data that cannot be easily manipulated or analyzed in a little less than two months[,]" Judge Romero correctly found good cause. (Id. at 6.)

---

requiring the production of documents in response to RFP No. 31. (Id.) Consequently, the court will not consider the objection to this portion of the order.

The Defendants contend that Judge Romero's conclusion was based on a series of errors concerning the Defendants' conduct in discovery. The court disagrees. In her order, Judge Romero acknowledged that the "Defendants have made some efforts to comply with discovery obligations," but her decision ultimately rested on the Defendants' conduct as it concerned the April production of the PED data. (Id. at 5–6.)

The court also disagrees with the Defendants' argument that Judge Romero should have evaluated Dr. Khoury's request for more discovery under Rule 56(d) of the Federal Rules of Civil Procedure. The Defendants are conflating a request for more discovery with a request for more time to engage in discovery to adequately respond to a motion for summary judgment. Compare Fed. R. Civ. P. 6(b)(1)(A) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time[.]") with Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition …."). Judge Romero determined that Rule 56(d) was not relevant to the motion to extend discovery because—at that point—it was not. The Defendants' motion for summary judgment had not been filed at the time Dr. Khoury filed his motion to extend fact discovery. (See ECF No. 125 (filed May 26, 2023); Mot. Summ. J., ECF No. 126 (filed June 9, 2023).) The intent of Dr. Khoury's motion to extend fact discovery was not to request more time to respond to the Defendants' motion. These are separate inquiries. Relatedly, the Defendants contend that Dr. Khoury should be limited in the discovery he is allowed to seek to what he outlined in his Rule 56(d) relief affidavits. In the Defendants' view, this would limit Dr. Khoury's permitted discovery to a second deposition of the Centers for Medicare & Medicaid Services (CMS). (See ECF No. 171 at 13.) But Dr. Khoury's request for Rule 56(d) relief was not so limited. (See Decl. Brandon J. Mark, ECF No. 149-4 at ¶¶ 8–11, 22 (explaining plans to

depose CMS once Dr. Khoury receives the Defendants' PED data, along with other witnesses identified in the documents and records); see generally Decl. Robert A. Griffith, ECF No. 149-3.) Judge Romero set the bounds of the discovery Dr. Khoury is permitted to seek in her order.

Finally, the Defendants argue that Dr. Khoury did not meet the good cause standard because he lacked diligence in pursuing discovery. For instance, the Defendants contend that in 16 months of fact discovery, Dr. Khoury did not notice a single deposition. (ECF No. 171 at 12 (quoting Decl. Matthew Curley, ECF No. 171-1 at ¶ 18).) But as Dr. Khoury has asserted several times, he has been waiting to notice and take depositions until he receives a meaningful production of the PED data.

### B.  Motion to Compel Documents

Judge Romero concluded that the requested information in RFP No. 33 is relevant and proportional to the needs of this case, with some exceptions. RFP No. 33 reads:

> With respect to each surgery in which you performed general anesthesia services since August 1, 2010, produce all electronically stored information, including any emails, data, and activity logs collected by the discovery vendor described in the Curley Email of July 22, 2022 relating to your activities during the anesthesia service for that surgery. This request seeks information only for surgeries for patients who were beneficiaries of a federal healthcare program (i.e., Medicare, Medicaid, Indian Health Services, or TRICARE).

(Resps. to Relator's Second Set of Reqs. for Produc. of Docs., ECF No. 132-2 at 10.) Judge Romero found that the data sought in this request "is necessary in native, searchable format to advance the case." (ECF No. 165 at 8.) But Judge Romero limited what the Defendants are required to produce in two ways. First, "[t]he PED data to be produced shall only date back to 2016." (Id.) Second, "the content of the communications on the PED data is not relevant to the claim." (Id. at 9.)

Dr. Khoury objects to the second limitation.  He argues that this information is relevant and proportional.  (See ECF No. 169 at 7, 11.)  The court agrees with Dr. Khoury.  The content of the communications on the PED data is relevant.  See Finneman v. Delta Airlines, Inc., No. 2:19-cv-00327, 2021 WL 2905628, at *1 (D. Utah March 11, 2021) ("[A] request for discovery should be considered relevant if there is any possibility the information sought may be relevant to a party's claim[.]").  The content of the communications is relevant to the materiality and falsity elements Dr. Khoury must prove under the False Claims Act.  For example, one of the factors the court looks at to assess materiality is "whether the noncompliance goes to the 'very essence of the bargain' [of reimbursing claims] or is only 'minor or insubstantial.'"  United States ex rel. Janssen v. Lawrence Mem'l Hosp., 949 F.3d 533, 541 (10th Cir. 2020).  Without knowing the extent of the Defendants' activities during surgery, adequately evaluating this factor would be difficult.  (See Summ. J. Hr'g Tr., ECF No. 163 at 44:18–45:2 ("On the one hand, one doctor texting another to ask [a question about a patient] … But a prolonged back and forth about completely non-clinical matters, I argue that that's quite relevant whether they are meeting the accepted standards of medical practice.").)  Furthermore, the government and the court cannot fully assess without knowing the full record whether certain requirements for reimbursement were violated.

The Defendants maintain that "[t]he relevance of the PED data is minimal at best in light of CMS's testimony that PED usage has no impact on payment for anesthesia services and does not render claims for anesthesia services false."  (ECF No. 172 at 9.)  But Dr. Khoury has yet to question CMS on the actual PED use in which the individual Defendants engaged.[3]

---

[3] The Defendants argue that Judge Romero "already held that the key witness in this case—CMS—'cannot speak to the PED data[.]'"  (ECF No. 171 at 12 (quoting Order Den. Pl.'s Mot. for Protective Order, ECF No. 124 at 2).)  But Judge Romero made this statement when deciding

On the proportionality of the content of the communications, the Defendants argue that the burden of producing the content of communications "does not derive from the <u>technical</u> process of providing the information alone," but "the more relevant burden stems from the <u>nature</u> of the information itself." (Defs.' Resp. in Opp'n Relator's Obj., ECF No. 179 at 12.) The Defendants are not wrong: "exercising reasonable diligence to protect such communications must entail a review of each message by counsel in order to redact or appropriately withhold privileged material." (<u>Id.</u>) Plus, "[p]roducing the content of PED data would … be unduly burdensome because it would abridge the extremely weighty privacy interests that such content implicates." (<u>Id.</u> at 14.)

The Defendants cite two cases in their motion to stay where courts have denied discovery in the context of requests to copy and/or inspect cell phones because of the privacy interests implicated by the requests. But these cases are distinguishable. See <u>Santana v. MKA2 Enters., Inc.</u>, No. 18-2094, 2019 WL 130286, at *1 (D. Kan. Jan. 8, 2019) ("Request for Production No. 21 … states: Produce all cellular telephones used by you from the date your employment with Defendant started to the present for purposes of inspection and copying."); <u>see also</u> <u>Henson v. Turn, Inc.</u>, No. 15-cv-01497, 2018 WL 5281629, at *5 (N.D. Cal. Oct. 22, 2018) (denying "request to require the plaintiffs to produce their mobile devices for [the defendant's] inspection or, in the alternative, to produce complete forensic images of their mobile devices"). RFP No. 33 does not seek the Defendants' PEDs to copy and/or inspect them. While the Defendants view Dr. Khoury's request "as tantamount to a forensic copy of the Physician Defendants['] PEDs[,]" this argument is misplaced. (Reply to Mot. to Stay, ECF No. 178 at 5 n.1 (citing <u>Kickapoo Tribe of</u>

whether to stay the Defendants' deposition of CMS (<u>see</u> ECF 124), after the "Defendants represented … that their proposed questions and topics for the CMS witness did not implicate PED data." (ECF No. 180 at 11 n.8.)

Indians of Kickapoo Rsrv. in Kan. v. Nemaha Brown Watershed Jt. Dist. No. 7, 294 F.R.D. 610, 618 (D. Kan 2013)).)  In Kickapoo, the request at issue sought "the inspection of the personally owned computers of employees of the responding party."  294 F.R.D. at 618.  Dr. Khoury does not seek that relief here.  He also insists that "the parties can work cooperatively to make sure that Defendants' concerns [about confidentiality and privacy] are addressed."  (Resp. in Opp'n to Mot. to Stay, ECF No. 176 at 9.)

Acknowledging the relevance of the content of the communications, the fact that the PED data is in the Defendants' sole control, and the burdens that the production of such information will impose on the Defendants and non-parties, the court takes a balanced approach in resolving this objection.  The Defendants need not produce all content of the communications.  Rather, they must produce a sampling of the content, "organized around particular anesthesia procedures."  (ECF No. 169 at 13 (quoting May 18, 2023, Letter, ECF No. 151-1 at 698).)  The sampling can be "of the content of chats, instant messages, emails, text messages, social media posts, and similar information."  (ECF No. 151-1 at 697.)  But the court does not permit Dr. Khoury to analyze the PED data and then determine the number of sampled surgeries.  (See id. at 698 ("The number of sampled surgeries would eventually depend on [Dr. Khoury]'s further analysis of the metadata[.]").)  Instead, the court orders the Defendants to produce the content from 25 sampled surgeries but leaves it up to Dr. Khoury to identify which surgeries after he has reviewed the PED data.  Although Dr. Khoury's need for the information outweighs the Defendants' burdens of producing the information, the burden on the Defendants is not insubstantial.  Ordering a sampling of the content of the communications appropriately balances these considerations.

Like Judge Romero, the court finds that the Defendants' confidentiality concerns regarding the communications can be dealt with under the Standard Protective Order in place in this case.  See DUCivR 26-2 ("The Standard Protective Order … applies in every case involving the disclosure of any information designated as confidential, unless the court orders otherwise.  It is effective by operation of this rule at the time a case is filed[.]")  The Defendants do not argue "that the protective order is insufficient."  (ECF No. 178 at 4.)  Nor has Dr. Khoury represented that he will challenge those designations.

Ultimately, the relevance of the content of the communications outweighs the privacy interests implicated by this case.  Cf. Ellis v. Hobbs Police Dept., No. 17-1011, 2019 WL 5697787, at *4 (D.N.M. Nov. 4, 2019) (finding that where privacy interests at stake are "very weighty," and relevance of discovery is minimal, "the requested discovery is not proportional to the needs of the case").  Accordingly, the court denies the Defendants' objection to Judge Romero's order and sustains in part Dr. Khoury's objection to Judge Romero's conclusion that the content of the communications associated with the PED data is not relevant or proportional to the needs of this case.  Dr. Khoury may identify up to 25 surgeries after he has reviewed the PED data, and the Defendants must produce the content from those sampled surgeries.

## II.     Motion to Stay Judge Romero's Order

The Defendants request that the court stay Judge Romero's order while it considers the merits of the parties' objections to the order.  (See ECF No. 172.)  Because the court has resolved the parties' objections, the court will terminate this motion as moot.

## III.    Motion to Reconsider the Court's Order Granting Dr. Khoury's 56(d) Relief

The Tenth Circuit has set forth the narrow grounds that warrant granting a motion for reconsideration.  These are: "(1) an intervening change in the controlling law, (2) new evidence

previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Alpenglow Botanicals, LLC v. United States, 894 F.3d 1187, 1203 (10th Cir. 2018) (citation omitted).  In a motion for reconsideration, it "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."  DiTucci v. First Am. Title Ins., No. 21-4120, 2023 WL 382923, at *5 (10th Cir. Jan. 25, 2023) (citation omitted).

The Defendants argue that the court erred in granting Dr. Khoury's Rule 56(d) relief request for two reasons: 1) by "rel[ying] heavily on Relator's representations that some sort of agreement exists with CMS for a second deposition and the [c]ourt's assumption that Relator intends to question CMS about the Physician Defendants' PED data in some do-over deposition" and 2) "because Relator has not met the Tenth Circuit's requirements for relief under Rule 56(d)."  (ECF No. 173 at 2–3.)

### A.  Relator's Representation about a Second CMS Deposition

The court did not err in relying on Relator's representation and the assumption that Relator intends to question CMS about the PED data in a second deposition.  The Defendants argue that there is "no evidence of any agreement between Relator and the government for a second CMS deposition because none exists."  (ECF No. 173 at 4; see ECF No. 171 at ¶¶ 26–28.)  Relying heavily on the fact that Relator has never subpoenaed CMS for testimony, noticed any specific topics for any deposition, or complied with Touhy regulations, the Defendants maintain that "these steps necessarily precede[] any 'agreement' by the government to produce a representative of CMS for a deposition."  (ECF No. 173 at 4.)  But Dr. Khoury "stands by his representations to the Court" that the government previously indicated it would not oppose a second deposition.  (See Resp. in Opp'n to Mot. Recons., ECF No. 177 at 6; see also Decl. Brandon J. Mark, ECF No. 177-1 at ¶ 8 ("On April 26, 2023, [the government] confirmed in

writing, in response to Dr. Khoury's 'question whether the Government would oppose a second 30(b)(6) deposition,' that the government 'will not oppose a second deposition.'").)

Concerned that the Defendants called Dr. Khoury's representation about a second deposition into question, the court held a status conference on February 28, 2024, and heard from counsel on the issue.  Dr. Khoury provided the court with a copy of the email he referred to in his affidavit.  (See Email from Sandra Steinvoort to Brandon J. Mark dated April 26, 2023, ECF No. 205-1; see also ECF No. 177-1 at ¶ 8.)  As Dr. Khoury asserted, the government did indicate that it would "not oppose a second deposition but … request[ed] that the topics be non-duplicative and as limited in scope as possible."  (ECF No. 205-1 at 2.)  At the status conference, the Defendants emphasized the language in the Steinvoort email requesting that the topics of any second deposition be non-duplicative and limited in scope.

Based on the email from Ms. Steinvoort, and counsel's comments at the status conference, the court is satisfied that Dr. Khoury will be able to conduct a second deposition of CMS.  Dr. Khoury has not yet noticed the topics for deposition because he is still waiting for the PED data.  Because he will have the context of the PED data, it is unlikely that the topics at the second depositions will be duplicative.  In any event, the government's email does not indicate that it will refuse a second deposition; the government merely requests that the topics be non-duplicative and limited in scope.  (See id.)

Moreover, it is not appropriate on a motion to reconsider to "revisit issues already addressed or advance arguments that could have been raised in prior briefing."  DiTucci, 2023 WL 382923, at *5.  The Defendants did not dispute Dr. Khoury's representation concerning the second deposition in prior briefing and have provided no reason why they could not do so.

## B.  The Court's Application of the Tenth Circuit's Rule 56(d) Standard

The court did not err in applying the Tenth Circuit's Rule 56(d) standard to this case. The Tenth Circuit treats Rule 56(d) motions liberally.  See Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1554 (10th Cir. 1993) (stating that unless Rule 56(f)[4] motions are "dilatory or lacking in merit, the motion should be liberally treated") (citation omitted).  "A prerequisite to granting relief, however, is an affidavit furnished by the [summary judgment] nonmovant."  Comm. for First Amend. v. Campbell, 962 F.2d 1517, 1522 (10th Cir. 1992).  The party seeking Rule 56(d) relief must also at least show: "(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable [him] to obtain those facts and rebut the motion for summary judgment."  Crumpley v. Associated Wholesale Grocers, Inc., No. 16-cv-02298, 2017 WL 1364839, at *5 (D. Kan. Apr. 13, 2017).  The information sought must be relevant to the summary judgment motion, or no extension will be granted.  See id., at *6 (citation omitted).

In granting Dr. Khoury's request for Rule 56(d) relief, the court relied on declarations from Dr. Khoury's counsel that showed he was unable to present facts essential to justify his opposition to the Defendants' motion for summary judgment.  (See ECF Nos. 149-3 & 149-4.) The court found that Dr. Khoury lacked (and still lacks) the PED data—which will reveal the facts not available—in a usable form.  Specifically, the PED data will demonstrate what the individual Defendants were doing on their PEDs during surgery and provide Dr. Khoury with additional examples of what he alleges are violations of accepted professional standards.  (See generally ECF No. 149-4.)  The Defendants argue that Dr. Khoury lacked specificity in alleging

---

[4] See Fed. R. Civ. P. 56 Comm. Notes—2010 Amend. ("Subdivision (d) [of Fed. R. Civ. P. 56] carries forward without substantial change the provisions of former subdivision (f).").

the facts not available in his Rule 56(d) affidavits, but Dr. Khoury's affidavits were as specific as they could be absent the PED data.  Dr. Khoury did not have the facts he needed because the data was (and still is) in the exclusive control of the Defendants.  (See id. at ¶ 5.)  And he has tried on numerous occasions to obtain the PED data by requesting extensions of fact discovery and moving to compel the production of the data.  (See Decl. Brandon J. Mark, ECF No. 125-3 at ¶¶ 6–8.)  Finally, the court found that additional time would enable Dr. Khoury to obtain the data and rebut the Defendants' motion; once he receives the data, he would be "able to meaningfully advance discovery and schedule necessary depositions of parties and third parties."  (ECF No. 149-4 at ¶ 4.)

Because the court did not err in applying the Tenth Circuit's liberal Rule 56(d) standard, the Defendants have not demonstrated any ground that warrants granting their motion for reconsideration.  The court denies the motion.

## IV.     Motion for Leave to File Second Amended Complaint

Finally, Dr. Khoury seeks leave to file a second amended complaint.  Dr. Khoury alleges that during discovery, he "discovered evidence that the Defendant Anesthesiologists not only habitually used [PEDs] … while ignoring patients but also regularly left the operating room during surgery for personal reasons, often to use their PEDs more intensely and without distraction."  (ECF No. 192 at 2.)  In addition to "contain[ing] new allegations regarding his previously dismissed allegations of factual falsity[,] … [t]hese allegations provide the [c]ourt additional examples of Defendant Anesthesiologists' many failures to properly monitor their patients while billing the government" and build on Dr. Khoury's legal falsity claim.  (Id. at 3.)

"After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the

16

Rule 15(a) standard."  Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n, 771 F.3d 1230, 1240
(10th Cir. 2014).  To show good cause, the movant must demonstrate that "scheduling deadlines
cannot be met despite [the movant's] diligent efforts.  Id. (citation omitted).  Good cause may be
satisfied "if a plaintiff learns new information through discovery or if the underlying law has
changed.  Id.  But "[i]f the [movant] knew of the underlying conduct but simply failed to raise"
the claims, they are barred.  Id.  The good cause standard to alter a scheduling order "must be
satisfied before determining whether an amendment should be permitted under Rule 15."  6A
Fed. Prac. & Proc. Civ. § 1522.2 (3d ed.)

     The court will not allow Dr. Khoury to amend his complaint to reassert his previously
dismissed factual falsity claims.  The deadline to file amended pleadings in this case was August
15, 2022.  (See Sched. Order, ECF No. 94 at 4.)  Dr. Khoury first received documents relating to
Dr. Miner's tendency to leave the operating room in July 2022, and he received additional
records documenting the extent of the issue in March and April 2023.  (See ECF No. 192 at 3, 7.)
At each of these points, Dr. Khoury was put on notice that he might need to amend his
complaint.  But he waited until August 2023 to bring up the issue in response to the Defendants'
motion for summary judgment (see Resp. in Opp'n Mot. Summ. J., ECF No. 149 at 37–38), and
he failed to file the current motion until February 2024.[5]  (See ECF No. 192.)  Nevertheless, Dr.
Khoury argues that good cause exists for the delay because he wanted the court to resolve the
ongoing discovery disputes and motions first.  (Id. at 8.)  He also maintains that he has been
waiting for the Defendants to complete their production of documents.  (Id.)

---

[5] Dr. Khoury's redacted motion for leave to file an amended complaint (ECF No. 182) was filed
in January 2024.

The court finds that although Dr. Khoury learned the new facts during discovery, he "simply failed to raise [the] claims" for a year.  Birch v. Polaris Industries, Inc., 812 F.3d 1238, 1248 (10th Cir. 2015) (quoting Gorsuch, Ltd., 771 F.3d at 1240).  Dr. Khoury's delay in pursuing these claims has become too long.  See Minter v. Prime Equip. Co., 451 F.3d 1196, 1205–06 (10th Cir. 2006) ("The longer the delay, the more likely the motion to amend will be denied[.] … [C]ourts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend.").

Allowing Dr. Khoury to amend his complaint to attempt to "salvage a lost case by untimely suggestion of new theories of recovery" would also prejudice the Defendants.  See id. at 1206 (quoting Hayes v. Whitman, 264 F.3d 1017, 1027 (10th Cir. 2001)).  "Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment.  Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint." Id. at 1208 (citation omitted).  If Dr. Khoury were permitted to revive his factual falsity claims, "the government would have the statutory right to investigate the claims while the complaint remains under seal.  Defendants then would certainly move to dismiss the new allegations once unsealed."  (Resp. in Opp'n Mot. to Amend, ECF No. 190 at 9 (demonstrating that dispositive motions addressing the factual falsity claims would not be resolved for several months).)  Allowing Dr. Khoury to amend would require the Defendants to expend significant additional resources to address the new claim and conduct discovery (in addition to fulfilling their remaining discovery obligations related to the PED data).  (See ECF No. 171 at ¶ 17 ("To respond to Relator's discovery requests in this action, Defendants have already incurred more than $100,000 just in vendor, consultant, technical, and

information technology staff fees.  In addition, Defendants have also incurred more than $400,000 in attorney's fees directly associated with discovery.").)

Dr. Khoury's request—as it seeks to revive claims of factual falsity—also fails to satisfy Rule 15 of the Federal Rules of Civil Procedure, which in some cases allows "a party [to] amend its pleadings only with the opposing party's written consent or the court's leave."  C. R. Bard, Inc. v. Med. Components, Inc., No. 2:17-cv-00754, 2020 WL 10057891, at *6 (D. Utah Aug. 7, 2020) (quoting Fed. R. Civ. P. 15(a)(2)).  Courts "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  But a court may refuse to allow leave to amend when amendment is unduly delayed, when it will prejudice the other party, when it is made in bad faith or with a dilatory motive, or when the amendment would be futile.  See Minter, 451 F.3d at 1204.

For the reasons explained above, the court finds that Dr. Khoury's amendment is both unduly delayed and will prejudice the Defendants.  It further attempts to "salvage a lost case by untimely suggestion of new theories of recovery."  See id. at 1206 (quoting Hayes, 264 F.3d at 1027).

To the extent Dr. Khoury is moving to amend his complaint as it relates to his legal falsity claim, the court does not find that an amended complaint is necessary.  As Dr. Khoury recognizes, the new allegations that the Defendants left the operating room during surgery "provide the [c]ourt [with] additional examples of Defendant Anesthesiologists' many failures to properly monitor their patients while billing the government[.]"  (ECF No. 192 at 3.)  And allowing Dr. Khoury to assert these allegations to support his legal falsity claim will not prejudice the Defendants.  The Defendants have had notice of the legal falsity claim from the lawsuit's inception and, unlike in U.S. ex rel. Told v. Interwest Const. Co., Inc., there are no

19

"fully submitted motion[s] for summary judgment before" the court, and discovery remains open. 267 F. App'x 807, 810 (10th Cir. 2008). These allegations are also consistent with Dr. Khoury's theory of the case, which is that the individual Defendants did not provide medical services that were "reasonable" or "necessary" because they were distracted during surgeries. See Gillette v. Tansy, 17 F.3d 308, 313 (10th Cir. 1994) (finding no prejudice to the respondent where the petitioner's amended claim "track[s] the factual situations set forth in his [complaint]").

Based on the court's recent orders, once Dr. Khoury receives the PED data, he will have the chance to meaningfully pursue his claim that the Defendants submitted legally false claims to the government for reimbursement of services that were not "reasonable" or "necessary" because of the individual Defendants' distractions during surgery. Dr. Khoury may use the allegations that the individual Defendants left the operating room during surgeries to use their phones to support his overall False Claims Act claim, to the extent the allegations are revealed through the PED data. The court does not permit Dr. Khoury to go on a fishing expedition for additional evidence showing that the individual Defendants left the operating rooms during surgeries.

**ORDER**

For the reasons stated above, the court ORDERS as follows:

1. The Defendants' Objection (ECF No. 171) is DENIED;

2. Dr. Khoury's Objection (ECF No. 169) is SUSTAINED IN PART, and the Defendants must produce the content from 25 sampled surgeries Dr. Khoury identifies after he has reviewed the PED data. Dr. Khoury must select the surgeries within 30 days of receiving the data or file a motion explaining why he needs more time;

3. The Defendants' Motion to Stay (ECF No. 172) is TERMINATED as moot;

4.   The Defendants' Motion for Reconsideration (ECF No. 173) is DENIED; and

5.   Dr. Khoury's Motion for Leave to File an Amended Complaint (ECF No. 192) is DENIED as it concerns his factual falsity claims.  The court considers his motion moot as it concerns his legal falsity claim.

DATED this 20th day of March, 2024.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge