Matthew M. Curley (*admitted PHV*)
Scott D. Gallisdorfer (*admitted PHV*)
BASS, BERRY & SIMS PLC
21 Platform Way South, Suite 3500
Nashville, Tennessee 37203
Telephone: (615) 742-6200
mcurley@bassberry.com
scott.gallisdorfer@bassberry.com

Stephen T. Hester (#9981)
COHNE KINGHORN, P.C.
111 E. Broadway, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 363-4300
shester@cohnekinghorn.com

*Attorneys for Defendants Mountain West Anesthesia, LLC, David A. Debenham, M.D., Eric A. Evans, M.D., Joshua J. Larson, M.D., and Tyler W. Nelson, M.D.*

Rodney R. Parker (#4110)
Richard Van Wagoner (#4690)
SPENCER FANE LLP
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 521-9000
rrparker@spencerfane.com
rvanwagoner@spencerfane.com

*Attorneys for Defendant John E. Miner, M.D.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF NEVADA *ex rel.* MICHAEL D. KHOURY, M.D.,<br><br>Plaintiffs,<br>v.<br><br>MOUNTAIN WEST ANESTHESIA, LLC; DAVID A. DEBENHAM, M.D.; ERIC A. EVANS, M.D.; JOSHUA J. LARSON, M.D.; JOHN E. MINER, M.D.; TYLER W. NELSON, M.D.; and DOE ANESTHESIOLOGISTS 1 through 150,<br><br>Defendants. | **DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY AND REPORT OF THOMAS J. DAWSON III**<br><br>Civil Case No. 2:20-cv-372-TC-CMR<br><br>Judge Tena Campbell<br>Magistrate Judge Cecilia M. Romero |

Defendants respectfully move the Court to exclude the expert report and testimony of Thomas J. Dawson III, J.D.  In a case where Relator alleges False Claims Act ("FCA") violations associated with anesthesia claims to Medicare and Medicaid, Relator and his counsel designated Mr. Dawson as "an expert on issues relating to pertinent government standards and practices, among others" (Dkt. 266), and then served Mr. Dawson's report on Defendants on May 15, 2025.  Mr. Dawson, a licensed attorney, "**declare[d] under penalty of perjury**" that his report was "**true and correct**."  But nothing could be further from the truth.  Admittedly drafted with the artificial intelligence (AI) application ChatGPT, Mr. Dawson's report relies on fabricated testimony purportedly from a government representative, false citations to and fictitious quotations from regulatory authorities and government manuals, and made-up industry publications:

> **"Q: So this evidentiary foundation for your analysis and your expert conclusions, that includes deposition testimony from CMS in this case that doesn't exist, quotes from State Medicaid manuals that don't exist, regulations that don't exist, quotes from Medicare manuals that don't exist.  All of that is the evidentiary foundation of your report, part of it, correct?**
>
> **A: It would appear to be the case….**

(Declaration of M. Curley ("Curley Dec."), Ex. B ("Dawson Dep.") at 140:12-21.)

Mr. Dawson's report and his testimony reflect a gross deviation from the obligations of Relator and his counsel, as well as Mr. Dawson himself, as the author of the unreliable and indefensible report.  Because of the myriad errors that permeate his report, both the report and his testimony must be excluded.  In addition, Mr. Dawson's report and testimony are littered with legal conclusions, even though this Court already admonished Relator that "[a] plaintiff's expert cannot dictate the meaning of a law or regulation."  (Dkt. 89 at 12.)  Finally, Mr. Dawson lacks the requisite experience to qualify him as an expert on the topics on which he purports to opine.

1

## APPLICABLE LAW

This Court serves an important gatekeeping function "to make certain that an expert, whether basing the testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). For this reason, "Rule 702 imposes a special obligation" on the Court to ensure the reliability of an expert's testimony. *Id.* at 147 (citing *Daubert v. Merrell Dow Pharmas., Inc.*, 509 U.S. 579, 589 (1993)).

## ARGUMENT

**I. Mr. Dawson's report and testimony are unreliable because both rely on fabricated deposition testimony and fictitious citations to and quotations from source materials.**

Mr. Dawson's use of ChatGPT in preparing his report, his citation to fabricated quotations and fictitious sources, as well his testimony relying on the foregoing, cannot meet Federal Rule of Evidence 702's reliability standard. Mr. Dawson has admitted that his report is riddled with such defects from start to finish. Courts have increasingly chastised experts and attorneys for blindly relying on AI to generate unreliable reports and other documents,[1] and yet Mr. Dawson's report stands out, even among those cases, for the remarkable number and extraordinary nature of the fabrications and errors.

    **A.    Examples of the fabrications and errors in Mr. Dawson's report.**

Mr. Dawson's fabrications and errors go to the very heart of his report and opinions. His

---

[1] A growing number of courts have condemned irresponsible use of AI and imposed sanctions, as appropriate. *See, e.g., Johnson v. Dunn*, 2025 WL 2086116, at *11-21 (N.D. Ala. July 23, 2025); *Garner v. Kadince, Inc.*, 2025 WL 1481740, at *3 (Utah Ct. App. May 22, 2025); *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 493 (D. Wyo. 2025); *Dehghani v. Castro*, 2025 WL 988009, at *4 (D.N.M. Apr. 2, 2025). Defendants reserve all rights to seek sanctions and other relief with respect to Mr. Dawson's report, as to Mr. Dawson, Relator, and Relator's counsel.

report lists specific "Materials Reviewed," with respect to which he purports to have "conducted a comprehensive and methodical review," explaining that those materials "collectively form the evidentiary foundation for [his] regulatory compliance analysis and expert conclusions." (Curley Dec., Ex. A ("Dawson Rpt.") at 21).) In his deposition, Mr. Dawson testified that he relied on the cited materials, reviewed them in "great detail," and that those materials formed the foundation of the opinions in his report. (Dawson Dep. at 28:23-31:17.) As a licensed attorney, Mr. Dawson also testified that he used citations in the report to direct the reader to specific pages or particular Bates-labeled documents, and that he understood the significance of using block quotes and quotation marks, particularly in documents used in legal proceedings. (*Id.* at 31:18-32:6, 141:6-142:25.) Mr. Dawson also testified that he "absolutely" understood the significance of having verified his report under penalty of perjury. (*Id.* at 20:7-18.)

Yet Mr. Dawson has now admitted that his report contains a litany of made-up quotes and sources, that he used ChatGPT to prepare it, and that he did so *knowing* the propensity of AI tools to "hallucinate" fictitious quotations and citations. (*Id.* at 60:5-65:15, 129:4-23, 133:8-135:19.) The report's inaccuracies and falsehoods fall into four categories: (1) deposition testimony from CMS; (2) publications of professional organizations; (3) CMS Medicare guidance documents; and (4) state Medicaid sources.[2]

***Fabricated CMS Testimony.*** Relator asserts FCA claims on behalf of the United States based on his theory that Defendants defrauded Medicare and Medicaid. To support his opinion

---

[2] The fabrications and errors are so numerous and pervasive that, to properly convey the scope of these issues to the Court, Defendants are providing a chart laying out the fabricated and erroneous materials from the report, an explanation of the fabrications and errors, and citations to Mr. Dawson's testimony admitting the foregoing. *See* attached Appendix A.

that providers are only entitled to payment from the government if they comply with his interpretation of CMS's regulations, Mr. Dawson included the following quote supposedly from Dr. Raeann Capehart's testimony as the Rule 30(b)(6) representative of CMS:

> This strict obligation was confirmed by Dr. Raeann Capehart, CMS and Noridian's designated 30(b)(6) witness, during her March 12, 2025, deposition. Dr. Capehart testified that:
>
> "The expectation is that the provider is following the standard of care. That's assumed when they submit the claim. If the standard is not met, and documentation doesn't demonstrate compliance, the claim must be denied."
> (Deposition of Dr. Raeann Capehart, Mar. 12, 2025, 45:10–21).

(Dawson Rpt. at 11.) This quote is, in fact, ***completely fictitious.***

Before admitting its fabrication, Mr. Dawson testified that the quote he attributed to Dr. Capehart supported one of the "***key points***" he was making in his report (Dawson Dep. at 52:22-25) (emphasis supplied)), and that he was citing this supposed testimony because CMS is the federal agency responsible for setting payment policy for Medicare and Medicaid (*id.* at 54:5-13). Yet, under questioning, Mr. Dawson then admitted the quote was fictitious (*id.* at 58:24-59:4):

> **"Q: So Mr. Dawson, Dr. Capehart's quote that you include in your report is not in the transcripts of [Dr. Capehart's] testimony in either of her depositions, correct?**
>
> **A: Correct."**

***Fabricated Publications of Professional Organizations.*** Mr. Dawson's report includes a quote purportedly from the American Society of Anesthesiologists' (ASA) Standards for Basic Anesthetic Monitoring, but he admitted that no such quote appears in that source. (Dawson Rpt. at 8; Dawson Dep. at 73:25-75:14.) Mr. Dawson also quotes the "2020 ASA and Anesthesia Patient Safety Foundation (APSF) Joint Statement on Distractions and PED Use." (Dawson Rpt. at 23 (providing supposed full title).) But Mr. Dawson now admits that: (1) there is no ***joint*** ASA and APSF statement (only a separate ASA statement), (2) the true document's title does not include

4

"***PED Use***"; and (3) the actual document does not contain the language quoted by Mr. Dawson in his report. (Dawson Dep. at 78:9-79:24, 80:22-81:8, 82:7-15, 83:15-85:5.)

***Fabricated Medicare Manual References.*** Mr. Dawson's report also cites to and quotes from Medicare manuals that do not contain the quoted material. His report purports to quote the Medicare Program Integrity Manual (MPIM), Chapter 15, but current Chapter 15 has been reserved for future use and contains no substantive content, and the prior version of the MPIM likewise does not contain the quoted language:

> **"Q: So this quote is not included in chapter 15 as it exists today or chapter 15 as it existed as of September 5th, 2018, correct?**
>
> **A: Correct."**

(Dawson Rpt. at 13; Dawson Dep. at 138:12-15.) Mr. Dawson also admits to including a fabricated quote from Chapter 1 of the Medicare Claims Processing Manual in his report. (Dawson Rpt. at 13 (quoted material below); Dawson Dep. at 139:12-20 (admitting quoted material does not exist).)

> Similarly, the Medicare Claims Processing Manual (MCPM), Chapter 1, § 10.1.1, provides:
>
> "Payment is conditioned upon the claim complying with all applicable laws, regulations, and instructions. Failure to meet these conditions results in denial or recoupment of payment."

***Miscited and Fabricated State Rules and Medicaid Materials.*** The report states that Utah Administrative Rule R414-1-2 enforces obligations relating to documentation, including of "[c]ontinuous intraoperative monitoring," "[p]recise start and stop times," and "[a]ccurate substantiation of the service site and nature of services rendered." (Dawson Rpt. at 17.) Not so. Mr. Dawson admits that the cited Administrative Rule in fact does not reference enforcement mechanisms or Medicaid program requirements at all. (Dawson Dep. at 116:12-118:10.) He also repeatedly cites to certain Bates-labeled documents he describes as the "Utah Medicaid Provider

5

Manual" and the "Nevada Medicaid Provider Manual." (Dawson Rpt. at 6, 8, 16, and 24 (citing NHS_0000535 and NHS_0000521).) But the documents with those Bates numbers are not what Mr. Dawson says, and they have nothing to do with Utah or Nevada Medicaid. (Dawson Dep. at 119:21-127:10.) Moreover, an internet search reflects there is no such document entitled "Nevada Medicaid Provider Manual," (Curley Dec. ¶ 10), and Mr. Dawson testified that he has no idea whether a "Nevada Medicaid Provider Manual" even exists. (Dawson Dep. at 127:11-129:3.)

> **B. The fabrications and falsehoods render Mr. Dawson's report and testimony unreliable and require exclusion.**

Mr. Dawson's use of fabricated quotes and sources and other ChatGPT-generated hallucinations should "shatter[] his credibility" with the Court, and his report and testimony must be excluded. *Kohls v. Ellison*, 2025 WL 66514, at *1-5 (D. Minn. Jan. 10, 2025) (excluding expert's report submitted under penalty of perjury where, as a result of using an AI tool, the expert "inadvertently included citations to two non-existent academic articles, and incorrectly cited the authors of a third article"). There is no question that Mr. Dawson has abdicated his independent judgment and critical thinking skills in favor of fabrications resulting from a ChatGPT-generated report. For their part, Relator's counsel also abdicated their professional obligations by apparently failing to make *any* effort to verify, check, or otherwise ensure the accuracy and integrity of Mr. Dawson's representations and citations. Neither the report nor the testimony is remotely reliable.

The significance of Mr. Dawson's misconduct in authoring this report, and Relator's counsel's misconduct in submitting it, is profound. This is an FCA lawsuit in which Relator is bringing claims *on behalf of the United States* because of alleged harm to the Medicare and Medicaid programs administered by CMS. Knowing this, Mr. Dawson nonetheless included fabricated deposition testimony from CMS's designated representative and fabricated language

6

from Medicare and Medicaid manuals. He otherwise invented citations to and quotations from numerous other sources that do not exist. It reflects an extraordinary misuse of the FCA's *qui tam* provisions for a Relator and his counsel to offer an expert whose report would falsify the testimony and publications of the very federal agency on whose behalf Relator is asserting the alleged claims. This conduct, particularly of a licensed attorney like Mr. Dawson, wastes this Court's time and resources, prejudices Defendants, and jeopardizes the reputation of the legal system. *See Kohls*, 2025 WL 66514, at *5 (cataloguing the "many harms" that "citing to fake sources imposes"). Given the unquestioned severity of the conduct, and the misleading and wholly unreliable nature of Mr. Dawson's report, his report and testimony must be excluded.

## II. Mr. Dawson's report and testimony improperly attempt to dictate the meaning of laws and regulations.

Mr. Dawson's opinions would not be admissible even *without* the fraudulent quotations and citations. The Court previously cautioned Relator and his counsel that "[a] plaintiff's expert cannot dictate the meaning of a law or regulation. That is the court's role."[3] (Dkt. 89 at 12.) Ignoring this admonition, Mr. Dawson's report and testimony would do just that, as the report indicates on the very front cover. Having used ChatGPT to draft the report's "Abstract," Mr. Dawson explains that he "evaluates whether anesthesia services provided by [Defendants] met the regulatory, credentialing, and professional standards required for lawful reimbursement under

---

[3] This warning derives from well-established Tenth Circuit case law: "[I]t is axiomatic that the judge is the sole arbiter of the law and its applicability." *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988). "[T]estimony which articulates and applies the relevant law . . . circumvents the jury's decision-making function by telling it how to decide the case." *Id.* at 808. Opinions as to legal standards or legal conclusions do "not aid the jury in making a decision, but rather attempt[] to substitute [the expert's] judgment for the jury's." *Pioneer Centres Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1342 (10th Cir. 2017).

7

Medicare [and Medicaid]." (Dawson Rpt. at Front Cover; Dawson Dep. at 143:4-144:5.)

Mr. Dawson's report otherwise reads like a legal brief, offering nothing more than repeated legal conclusions based on Relator's theory of the case:

- "Providers must affirmatively satisfy all statutory, regulatory and professional requirements to lawfully receive reimbursement," (Dawson Rpt. at 4)

- Asserting that 42 U.S.C. § 1395y(a)(1)(A) "bars payment for any service that is not reasonable and necessary, which again, requires services to be furnished in accordance with professional standards of medical practice," (*id.* at 15)

- "CMS explicitly incorporates compliance with professional clinical standards into the regulatory definition of 'reasonable and necessary' services," (*id.* at 3)

- "If the allegations against MWA are substantiated, CMS, Noridian and the relevant state Medicaid authorities would have been legally required to deny, recoup, or otherwise sanction the associated claims," (*id.* at 7)

- "Central to these obligations is the principle that only services deemed 'reasonable and necessary' may lawfully be reimbursed" (*id.*); and

- "If the allegations against MWA-affiliated providers are substantiated,… such conduct would constitute material breaches of their CMS-855I certifications." (*id.* at 14)

In his deposition, Mr. Dawson likewise made no effort to hide the fact that his report and testimony seek to dictate the meaning of a law or regulation. Again, examples abound:

- "Q: And your opinion involves your assessment of whether the legal requirements for reimbursement for anesthesia services were met in connection with claims for anesthesia services provided by the physician defendants, correct? A: Yes." (Dawson Dep. at 146:2-8.)

- "Q: … [Y]ou're offering your opinions as to what the various laws and regulations cited in your report require [in] order for reimbursement for anesthesia services to be appropriate? A: Correct." (*Id*. at 146:9-14.)

- "Q: … [I]s it fair to say that you're giving your best opinion as to the – as to the meaning of that particular statute and the associated regulations? A: Yes." (*Id.* at 149:13-18.)

- "Q: Whether payment to MWA and the physician defendants for anesthesia services was lawful, that's a key part of your opinion, correct? A: Yes." (*Id.* at 154:20-24.)

8

- "Q: And you're also offering your opinion on the legal significance of a physician completing form 855I, correct? A: Yes." (*Id*. at 176:16-19.)

*(See also id.* at 143-198 (covering the legal opinions in Mr. Dawson's report).)

The legal opinions that permeate Mr. Dawson's report and provide its very foundation are inappropriate and would usurp the role of the Court. The report and testimony must be excluded for this reason, as well. *See Hafen v. Howell*, 2023 WL 2188566, at *4-5 (D. Utah Feb. 23, 2023); *Russo v. Ballard Med. Products*, 2006 WL 234586, at *16 (D. Utah Aug. 10, 2006).

**III. Mr. Dawson is unqualified to offer the opinions included in his report and testimony.**

An expert must be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Where an expert is offered based on their experience, courts consider "the nature of the issue, the expert's particular expertise, and the subject of [the] testimony." *F & H Coatings, LLC v. Acosta*, 900 F.3d 1214, 1222 (10th Cir. 2018) (quoting *Kumho*, 526 U.S. at 148-50). The topic of the proposed testimony also must "fall within the reasonable confines of [the witness's] expertise." *Siegel v. Blue Giant Equip. Corp.*, 793 F. App'x 737, 742 (10th Cir. 2019).

Mr. Dawson is not qualified to serve as an expert in this action. His exclusion is required on this basis too. Mr. Dawson has never served as an expert on the topics that form the substance of his report or on whether claims for anesthesia services are payable by government healthcare programs. (Dawson Dep. at 287:6-12.) None of his professional experience (or that of his consulting firm) has related to claims for reimbursement for anesthesia services. (*Id.* at 280:18-281:1, 288:11-15.) While he claims his consulting firm conducts "healthcare compliance analysis," "clinical standards evaluation," and "assess[ments]" of whether "healthcare services satisfy the statutory, regulatory, contractual, and professional conditions required for payment under federal and state public healthcare programs," neither Mr. Dawson nor his firm has ever

9

done so with respect to claims for anesthesia services.  (*Id.* at 277:3-280:5.)  And none of his professional writings, public speaking, or professional activities of any sort have involved whether claims for anesthesia services are payable by government healthcare programs or the impact of the usage of personal electronic devices by anesthesiologists on such claims. (*Id.* at 287:13-290:13.)

Mr. Dawson markets himself as a "highly accomplished ERISA attorney, health policy expert, forensic economist, and medical pricing expert." (Curley Dec., Exs. F & H.)  His consulting firm "specializes in economic damages analysis for attorneys and clients in Personal Injury, Business, and Healthcare Litigation."  (Curley Dec., Ex. G.)  But, none of Mr. Dawson's experience relates to the matters at issue in this litigation and on which he opines in his report. And, he has never been employed by, nor provided consulting services for, CMS, any Medicaid agency, or any Medicare Administrative Contractor.  (Dawson Dep. at 272:25-274:8.)

Mr. Dawson's opinions and testimony do not "fall within the reasonable confines of [his] expertise," which is estimating medical expenses for damages purposes in medical negligence, personal injury, and medical malpractice cases. *Siegel*, 793 F. App'x at 742.  He is therefore not qualified to offer the opinions included in his report and his testimony. *Id.* at 741-42.[4]

## **CONCLUSION**

For the reasons above, Defendants respectfully request that the Court exclude Mr. Dawson's report and preclude him from testifying in this matter.

Dated this 25th day of July 2025.

---

[4] *See Rowe v. DPI Specialty Foods, Inc.*, 727 F. App'x 488, 500-01 (10th Cir. 2018) (affirming decision to limit expert testimony because of lack of expertise); *Griffeth v. United States*, 2014 WL 6930056, at *4 (D. Utah Dec. 8, 2014) (Campbell, J.) (excluding expert because "Ms. Phelps has never acted as an expert, consulted, or written on the subject," among other reasons).

Respectfully submitted:

COHNE KINGHORN, P.C.

/s/ Stephen T. Hester
Stephen T. Hester (#9981)
111 E. Broadway, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 363-4300
shester@cohnekinghorn.com

BASS BERRY & SIMS PLC

/s/ Matthew M. Curley
Matthew M. Curley (*admitted PHV*)
Scott D. Gallisdorfer (*admitted PHV*)
21 Platform Way South, Suite 3500
Nashville, Tennessee 37203
Telephone: (615) 742-6200
mcurley@bassberry.com
scott.gallisdorfer@bassberry.com

*Attorneys for Defendants Mountain West Anesthesia, LLC, David A. Debenham, M.D., Eric A. Evans, M.D., Joshua J. Larson, M.D., and Tyler W. Nelson, M.D.*

SPENCER FANE LLP

/s/ Rodney R. Parker
Rodney R. Parker (#4110)
Richard Van Wagoner (#4690)
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 521-9000
rrparker@spencerfane.com
rvanwagoner@spencerfane.com

*Attorneys for Defendant John E. Miner, M.D.*

11

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 25, 2025, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Joel A. Ferre
UNITED STATES ATTORNEY'S OFFICE
DISTRICT OF UTAH
111 S. Main Street, Suite 1800
Salt Lake City, Utah 84111
joel.ferre@usdoj.gov

Brandon J. Mark
Hannah J. Ector
PARSONS BEHLE & LATIMER
201 S. Main Street, Suite 1800
Salt Lake City, Utah 84111
bmark@parsonsbehle.com
hector@parsonsbehle.com

Lynn M. Adam
ADAM LAW LLC
One Decatur Town Center
150 E. Ponce de Leon Avenue, Suite 225
Decatur, Georgia 30030
ladam@lynnadamlaw.com

Robert A. Griffith
75 State Street, Suite 100
Boston, Massachusetts 02109
robert@ragriffithlaw.com

Tejinder Singh
SPARACINO PLLC
1920 L Street NW, Suite 835
Washington, District of Columbia 20036
tejinder.singh@sparacinopllc.com

Rodney R. Parker
Richard Van Wagoner
SPENCER FANE LLP
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
rrparker@spencerfane.com
rvanwagoner@spencerfane.com

      /s/ Matthew M. Curley