Matthew M. Curley (*admitted PHV*)
Scott D. Gallisdorfer (*admitted PHV*)
BASS, BERRY & SIMS PLC
21 Platform Way South, Suite 3500
Nashville, Tennessee 37203
Telephone: (615) 742-6200
mcurley@bassberry.com
scott.gallisdorfer@bassberry.com

Stephen T. Hester (#9981)
COHNE KINGHORN, P.C.
111 E. Broadway, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 363-4300
shester@cohnekinghorn.com

*Attorneys for Defendants Mountain West Anesthesia, LLC, David A. Debenham, M.D., Eric A. Evans, M.D., Joshua J. Larson, M.D., and Tyler W. Nelson, M.D.*

Rodney R. Parker (#4110)
Richard Van Wagoner (#4690)
SPENCER FANE LLP
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 521-9000
rrparker@spencerfane.com
rvanwagoner@spencerfane.com

*Attorneys for Defendant John E. Miner, M.D.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF NEVADA *ex rel.* MICHAEL D. KHOURY, M.D.,<br><br>Plaintiffs,<br>v.<br><br>MOUNTAIN WEST ANESTHESIA, LLC; DAVID A. DEBENHAM, M.D.; ERIC A. EVANS, M.D.; JOSHUA J. LARSON, M.D.; JOHN E. MINER, M.D.; TYLER W. NELSON, M.D.; and DOE ANESTHESIOLOGISTS 1 through 150,<br><br>Defendants. | **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS**<br><br>Civil Case No. 2:20-cv-372-TC-CMR<br><br>Judge Tena Campbell<br>Magistrate Judge Cecilia M. Romero |

## PRELIMINARY STATEMENT

Disqualification of counsel and a *qui tam* relator are significant sanctions. But the conduct here was—and continues to be—extreme. Defendants do not seek sanctions over some trivial "mistake." (Dkt. 301 at 1.) Rather, Relator and his counsel submitted a fraudulent report from an unqualified expert, filled with obvious fabrications, involving some of the most important testimony and documents in this case, while falsely attributing fake quotations to the very government agency whose interests Relator purports to represent. Worse *still*, when confronted, Relator's counsel delayed withdrawing the report (even trying to use it as a bargaining chip); took no responsibility; blamed everyone else; and exacerbated Mr. Dawson's fabrications by repeatedly submitting filings with even *more* misstatements and misleading half-truths of their own.[1]

This conduct is egregious, violated multiple rules of professional conduct, and supports serious sanctions. Indeed, that is precisely the conclusion of Professor Nancy Moore, one of the nation's leading experts on legal ethics and whose declaration Defendants have attached to this reply.[2] Disqualification of both the responsible attorneys and Relator himself is warranted.

---

[1] As just one example, Relator's counsel emphasize that they "offered in good faith to correct" their "mistake" by "voluntarily withdrawing the report and compensating Defendants." (Dkt. 301 at 1.) This is deliberately misleading. What they *actually* did was "offer" to withdraw the report and pay costs ***only if*** Defendants would first stipulate to substitution of a new expert. A responsible attorney would have immediately withdrawn the fraudulent report upon learning of it, *full stop*.

[2] Defendants attach Professor Moore's declaration given the nature of the issues before the Court and Relator's belated submission of declarations from his counsel explaining how Mr. Dawson's report was prepared and submitted. (*See* Dkts. 295-1, 295-2.) Relator attached those declarations to a different reply brief only *after* Defendants moved for sanctions. Relator extensively relies upon them in his opposition to the motion for sanctions, and Defendants are entitled to respond. Moreover, courts have repeatedly confirmed that opinions of legal ethics experts are helpful when evaluating attorney misconduct and potential sanctions. *See, e.g.*, *Howard v. Wilkes & McHugh, P.A.*, 2007 WL 9706137, at *3 (W.D. Tenn. Aug. 24, 2007) ("Courts have often considered opinions offered by legal ethics experts in deciding motions to disqualify counsel.").

## ARGUMENT

### I. Relator and His Counsel Cannot Avoid Responsibility by Blaming Mr. Dawson.

Relator's opposition is an exercise in blame-shifting. His counsel insist they did nothing wrong, pin the fault on Mr. Dawson, disclaim even the most *basic* responsibility for verifying the integrity of evidence they submitted, and invoke technicalities to suggest they avoided violating any rules of professional conduct. None of these excuses has merit. The conduct here is plainly sanctionable, and both Relator and his counsel—not *just* Mr. Dawson—are responsible.

*First*, while Mr. Dawson may have drafted the report (or relied on ChatGPT to do so), that does not let Relator and his counsel off the hook. In fact, Rule 26(a)(2) puts expert disclosure obligations on the *party* (and by extension the party's counsel), which includes ensuring that an expert report discloses the "facts or data considered" by the expert witness. Fed. R. Civ. P. 26(a)(2)(B)(ii). Relator's counsel did not lift a finger to do so. Had they made even a basic effort to ensure that the "facts or data" Mr. Dawson relied upon were properly disclosed, they would have readily understood that many of the relevant "facts or data" *simply did not exist*.[3]

*Second*, Relator and his counsel had an even more obvious obligation ***not to offer falsified evidence*** in a federal court proceeding. By doing so, they violated several rules of professional conduct, including Utah Rules of Professional Conduct 3.3(a)(1), 3.3(b), 3.4(b), 8.4(c), and 8.4(d). (*See* attached Decl. of Prof. N. Moore ("Moore Decl.") ¶¶ 13-36.) Of course, even setting aside those specific rules, Relator's counsel would still be subject to the *inherent* disciplinary authority of the Court. (*Id.* ¶¶ 37-44.); *see also Johnson v. Dunn*, 2025 WL 2086116, at *13 (N.D. Ala. July

[3] Given that Mr. Dawson's report did not include "a list of all publications authored in the previous 10 years," as Rule 26(a)(2)(B)(iv) requires, the statement that they "focus[ed] their review" of the report on "compliance with Rule 26" (Dkt. 285 at 10) was clearly yet *another* falsehood.

23, 2025) (noting that "[t]he sanction authority of the court is not limited to these rules [of professional conduct]" and citing the court's "inherent" power to sanction litigation conduct).

Relator primarily argues that he and his counsel should not be held responsible for the falsified evidence because they supposedly lacked actual knowledge of Mr. Dawson's fabrications and his use of AI. Even assuming that were true (and it is questionable[4]), they certainly ***should have known***, which is no less significant than actual knowledge. (*See* Moore Decl. ¶¶ 15-16.); *cf. United States v. Idowu*, 2023 WL 7089742, at *6 (D. Utah Oct. 26, 2023) ("knowledge" may be shown through "evidence of actual knowledge or of deliberate ignorance of the operative facts").

Indeed, the problems with Mr. Dawson's report were so obvious that the failure of Relator's counsel to recognize them must have resulted from their willful blindness. Consider just two of the most egregious examples. CMS's second deposition was a prominent, heavily litigated issue, with Relator's counsel stating that Relator's claims ***depended*** on it. (*See* Dkt. 163 at 54:13-18.) It then occurred just two months before Mr. Dawson submitted his report and was taken by Relator's counsel, Mr. Griffith. Yet the fake CMS testimony ***directly contradicted*** CMS's actual testimony.[5] It was obvious that the testimony was fabricated. Mr. Griffith's excuse—that it was

---

[4] Consider that Messrs. Mark and Griffith *also* initially told the Court they reviewed Mr. Dawson's report for "grammar." (Dkt. 285 at 10, 12.) But the report was *littered* with grammatical and formatting errors. (*See* Dkt. 293 at 3-4 & n.1.) Relator's counsel has now backtracked, asserting that, while Mr. Mark noticed grammatical and formatting issues, he chose *not* to correct them. (Dkt. 295 at 5; Dkt. 295-2 ¶ 32.) Given that series of events, it is reasonable to conclude that Relator's counsel *also* noticed more substantive problems, but likewise chose to do nothing.

[5] The fake quotation stated that a Medicare claim "must be denied" if the "documentation doesn't demonstrate compliance" with "the standard of care" when a provider "submit[s] the claim." (Dkt. 282-3 at 11.) In contrast, CMS's *real* testimony was the ***opposite—***claims are *not* accompanied by documentation of compliance with any standard of care and CMS does *not* evaluate whether a standard of care was met when paying claims. (*See* Dkt. 301-1 at 63:12-65:21.)

"substantively correct" (Dkt. 295-1 ¶ 14)—is ***false***; in so claiming, he cites a Medicare enrollment form that does not even *mention* standards of care, which was the subject of the fake quotation.

The fake quotation, titling, and mischaracterization of the ASA Statement on Distractions was equally blatant. Mr. Dawson not only fabricated a quotation, but also falsely characterized it as a ***joint*** statement by the ASA and APSF, while inventing the title, "Statement on Distractions ***and PED Use.***" (Dkt. 282-3 at 8, 23.) But the *real* ASA Statement on Distractions has been a key document in this case. Relator even quoted it in his complaint, and his counsel introduced it as an exhibit in ***six*** different depositions, just a few weeks before submitting Mr. Dawson's report.

Mr. Mark now claims he assumed the fabricated "joint" statement was a *different* document altogether. (Dkt. 295-2 ¶ 37; Dkt. 301 at 5.) That is a breathtaking assertion. If it were true, it would require him to believe that Mr. Dawson unearthed a new, highly relevant clinical document from two leading anesthesiology organizations that *no one else*—not the parties, counsel, or any clinical experts—had discovered in years of litigation. It would then require belief that Mr. Mark was so incurious about this supposed discovery that he did not even attempt to locate the document, review its content, or provide it to his *clinical* experts. To be blunt, Mr. Mark's representation is ludicrous; it mocks the Court and Mr. Mark's own ethical obligations. That he nevertheless included such an incredible claim in a declaration underscores the need for his disqualification.

Relator's counsel also ignored numerous other red flags before submitting the falsified report. Mr. Dawson was clearly unqualified to serve as an expert. (*See* Dkt. 282 at 9-10.) Yet Relator's counsel engaged him anyway, and they did so ***without ever reviewing his actual resume or CV.*** (*See* Dkts. 295-1, 295-2.) Their declarations also provide further evidence of his incompetence. Mr. Dawson misunderstood his assignment, disregarded counsel's instructions,

and produced multiple convoluted, repetitive drafts that did not even address the relevant issues. (Dkt. 295-1 ¶ 11; Dkt. 295-2 ¶¶ 23-27.) He also restructured his draft at the last minute, and Mr. Mark ***admits*** that he noticed (but did not bother to correct) various formatting and typographical errors. (Dkt. 295-2 at 32.) Despite all of that, Relator's counsel would have the Court believe they acted reasonably in declining to check *any* sources or citations, even those to *litigation* documents.[6]

Relator's counsel's willful disregard of these warning signs is not surprising. After the second CMS deposition, they admit to "fac[ing] a dilemma" (Dkt. 285 at 5): CMS's testimony had *not* changed, which they said would likely result in their "los[ing] this case." (Dkt. 163 at 54:13-18.) So, they pinned their hopes on Mr. Dawson, ignoring his lack of qualifications, the myriad problems with his work, and its obvious falsehoods. All the evidence indicates this was a *choice* born of desperation to change the facts, not just an innocent oversight. *See, e.g.*, *Flycatcher Corp. v. Affable Ave. LLC*, 2025 WL 2030059, at *2 (S.D.N.Y. July 18, 2025) (counsel's failure to identify AI fabrications resulted from "a series of deliberate choices, not 'inadvertent' errors.").[7]

Relator's counsel's intent to rely on Mr. Dawson's report and testimony only makes their

[6] Relator's counsel suggest it would have been improper to check Mr. Dawson's work. (Dkt. 301 at 12.) But the case law only prohibits *ghostwriting* an expert's report. *See, e.g.*, *Rodgers v. Beechcraft Corp.*, 2016 WL 7888002, at *3-4 (N.D. Okla. Oct. 27, 2016). None of the cases Relator cites remotely suggest it is inappropriate for an attorney to *at least* check an expert's citations. And even Relator's own cases say an attorney's reliance on an expert must be "reasonable under the circumstances," *see Coffey v. Healthtrust, Inc.*, 1 F.3d 1101, 1104 (10th Cir. 1993), and that an attorney should "ensure" that the expert's report complies with Rule 26, *Rodgers*, 2016 WL 7888002, at *4, which Mr. Dawson's did not.

[7] Relator's counsel contend that Mr. Dawson's testimony was unnecessary, supposedly because CMS could still testify at trial. But having already testified *twice* in this case in a way that contradicted Relator's position, why would CMS suddenly change its tune at trial? And if Relator's counsel really believes Mr. Dawson was not necessary, why are they *still* seeking to replace him with another expert? Relator offers no explanation.

conduct *more* egregious. *See Parker v. Costco Wholesale Corp.*, 2025 WL 2481280, at *3 (W.D. Wash. Aug. 28, 2025) (describing as "particularly egregious" AI-generated material that falsely quoted the record and "mischaracterized evidence," given its intended use at summary judgment). While his report was not submitted to the Court, they certainly expected that it would be. Relator also *intended* Defendants to rely on the report in evaluating their own defenses; *intended* the Court to rely on it in evaluating Defendants' forthcoming summary judgment motion; and *intended* the jury to rely on it at trial. (*See* Dkt. 285 at 5-6 ("Dr. Khoury engaged [Mr. Dawson] to testify about such topics at trial.").) That none of this occurred was only because *Defendants* intervened—"a stroke of pure luck for [Relator's] lawyers, and one that did not remediate the waste and harm their misconduct wrought." *Mavy v. Comm'r of Soc. Sec. Admin.*, 2025 WL 2355222, at *9 (D. Ariz. Aug. 14, 2025) (disqualifying counsel based on AI-generated fabrications).

## II. Relator's Response to the Exposure of Mr. Dawson's Fraudulent Report Makes the Conduct Even More Egregious.

Relator's submission of Mr. Dawson's fraudulent report would be bad enough on its own, but his counsel's response makes the conduct far *worse*. They learned of Mr. Dawson's fabrications no later than July 21, when he acknowledged them in his deposition and admitted using ChatGPT. At that point, if not before, Relator's counsel *knew* they had submitted falsified evidence, and any reasonable attorney would have withdrawn the report and de-designated Mr. Dawson *immediately*. Any reasonable attorney would also have taken responsibility, apologized to the Court, and provided a fulsome explanation, supported by declarations. Indeed, all of this is exactly what has happened in most other cases involving AI-generated fabrications.

Relator's counsel did *none* of that. They took *no* immediate action after the deposition, forcing Defendants to move to exclude Mr. Dawson and his report. Even then, Relator and his

counsel *still* did not withdraw the fraudulent report, instead ***trying to barter*** with Defendants for agreement to a substitute expert. When they finally agreed to withdraw the report more than two weeks after the deposition, they took no responsibility, blamed everyone else, and did not submit substantive declarations from counsel explaining their involvement. They also filed the motion to substitute *the same day*—making clear that much of the time they now attribute to "investigat[ing]" Mr. Dawson's misconduct (Dkt. 301 at 14 n.5) was spent preparing their next strategic move.

Only *after* Defendants sought sanctions did Relator's counsel bother to submit declarations. Yet those declarations themselves contradict representations in earlier filings,[8] conflict with each other,[9] and leave critical questions unanswered.[10] Relator's opposition to the sanctions motion contains still *more* misstatements,[11] and blames others while blustering about the

[8] For example, Relator's counsel initially represented that they "avoided" addressing the "substance" of Mr. Dawson's report and conducted only a cursory review for "clarity," "grammar," and "compliance with Rule 26." (Dkt. 285 at 10.) But the more recent declarations now admit they reviewed *multiple* drafts for "subject matter" and "substance" (Dkt. 295-1 ¶ 12), and "provid[ed] feedback" (Dkt. 295-2 ¶ 28). Their feedback clearly had a material impact on the substance of Mr. Dawson's report, as counsel were at first dissatisfied with the drafts' failure to "adequately address" certain subject matter. (Dkt. 295-1 ¶ 11; Dkt. 295-2 ¶¶ 24-25.) Counsel's involvement was thus plainly far more extensive than they originally represented to the Court.

[9] For example, Mr. Mark claims he and Mr. Griffith "divided the labor" for the expert reports, with his firm "assigned two other experts" and Mr. Griffith "assist[ing] Mr. Dawson." (Dkt. 295-2 ¶¶ 15-16.) Yet Mr. Griffith blames his lack of "attention" to Mr. Dawson's report on his work related to "Relator's other three experts," without mentioning any division of labor. (Dkt. 295-1 ¶ 12.)

[10] These unanswered questions include: (1) which counsel provided background materials to Mr. Dawson and what was provided? (2) did counsel direct him to specific testimony or portions of the materials? (3) what specific feedback did counsel provide him about earlier drafts? (4) when did the fabrications first appear in Mr. Dawson's report—for example, in the first draft, or only in the final? and (5) how did Mr. Dawson explain the fabrications to counsel after his deposition?

[11] Relator now shamelessly says he told the Court all along CMS would not be able to testify about Defendants' PED data. (Dkt. 301 at 5.) Not so. The citation offered for this claim does not support it, and it was *Defendants* who told the Court from the beginning that CMS would not be able to testify about the data. (*See* Dkt. 123 at 2 (arguing that CMS "ha[s] never seen Defendants' PED data and thus cannot testify about it.").) Relator's counsel, by contrast, ***repeatedly*** said they would

merits of Relator's underlying claims. None of this was the result of an innocent mistake.

**III. Relator's Counsel Should Be Disqualified.**

Messrs. Mark and Griffith and their firms should be disqualified. (Moore Decl. ¶¶ 45-53.) Their conduct is even more egregious than that in other recent cases involving AI fabrications where courts disqualified counsel. *See Mavy*, 2025 WL 2355222, at *10; *Johnson*, 2025 WL 2086116, at *20. In those cases, counsel apologized, took responsibility, and implemented broader remedial actions promptly upon learning of the AI fabrications, yet the courts *still* found their disqualification warranted. Here, by contrast, counsel waited *weeks* before withdrawing the fraudulent report, and sought to avoid responsibility, shift blame, and obfuscate the facts.[12]

To avoid this conclusion, Relator minimizes the misconduct, arguing in convenient and self-serving fashion that counsel avoided violating any ethical rule. But their conduct *did* violate several rules of professional conduct, as Professor Moore's declaration explains. (Moore Decl. ¶¶ 13-36.) And the Court's *inherent* disciplinary authority also provides ample ground for sanctioning the submission of falsified evidence and the failure to promptly withdraw it. *See Johnson*, 2025 WL 2086116, at *13; (*see also* Moore Decl. ¶¶ 37-44.)

---

show CMS the data and would elicit CMS's "opinions" or "reaction"—indeed, they suggested that was a main *purpose* of the second deposition. (Dkt. 116 at 8; Dkt. 129 at 4; Dkt. 147 at 5; Dkt. 163 at 43:16-44:1, 47:1-22; Dkt. 177 at 8; Dkt. 208 at 18:16-21, 19:9-12.) But once the Court allowed the deposition to proceed, Relator's counsel reneged and did nothing of the sort.

[12] Relator contends the Court should analyze potential disqualification by applying the five-factor test described in *Flying J Inc. v. TA Operating Corp.*, 2008 WL 648545, at *6 (D. Utah Mar. 10, 2008). But the Tenth Circuit has never applied that test, and district courts have usually applied it only in cases involving attorney conflicts of interest. In cases involving attorney misconduct, courts have instead focused on the specific facts and the need to penalize and deter the relevant misconduct. *See, e.g.*, *Johnson*, 2025 WL 2086116, at *20 (disqualifying counsel because "a fine and public reprimand are insufficient here"). That is the approach the Court should take here.

Relator's claim of "substantial hardship" from disqualification of counsel (Dkt. 301 at 16) is exactly the ***opposite*** of what he recently told the Court when opposing Defendants' motion for a stay. In that filing, Relator argued a stay was unnecessary because "[Relator] still has two other law firms representing him," and "***[t]hose firms and lawyers are prepared to move forward with the case even without the firms challenged by Defendants' motion***." (Dkt. 296 at 5 (emphasis supplied).) This disingenuous flip-flop totally undermines Relator's new plea of "hardship."

Finally, this case is far from trial-ready: at least ***five*** depositions remain; Defendants intend to seek the exclusion of three of Relator's remaining experts; and they will also seek summary judgment. Defendants are hardly seeking Relator's counsel's disqualification on the eve of trial.

## IV. Relator Himself Should Also Be Disqualified.

Defendants' motion explained the straightforward basis for disqualifying Relator from continuing to represent the United States. Relator's response is confined to three sentences, stating in conclusory fashion that "[t]he argument to disqualify Dr. Khoury himself is frivolous." (Opp. 17.) The opposition totally disregards that a *qui tam* relator "is no ordinary civil plaintiff." *U.S. ex rel. Polansky v. Exec. Health Resources, Inc.*, 599 U.S. 419, 425 (2023). And that Relator stands in the shoes of the United States, as the real party in interest. *Id.* And that the United States is "bound by the proceedings in the relator's case for purposes of res judicata and collateral estoppel." *U.S. ex rel. Pedersen v. Hosp. Corp. of Am.*, 2012 WL 718896, at *3 (D. Utah. Feb. 14, 2012). For this reason, courts often evaluate whether a *qui tam* relator continues to be a suitable representative of the United States in FCA litigation. *See, e.g.*, *Borzilleri v. Bayer Healthcare Pharms., Inc.*, 24 F.4th 32, 38 (1st Cir. 2022) (affirming dismissal of *qui tam* lawsuit where relator's actions "[c]onvinced the [g]overnment that he is not an appropriate advocate of the United

States' interests in this action"); *U.S. ex rel. FLPA v. Quest Diagnostics Inc.*, 734 F.3d 154, 167 (2d Cir. 2013) (disqualifying relator based on misconduct and conflicts of interest); *U.S. ex rel. USN4U v, LLC v. Wolf Creek Fed. Servcs.*, 2023 WL 8480085, at *1 (N.D. Ohio Dec. 7, 2023).

Relator has offered no rebuttal to Defendants' argument that he is no longer an adequate representative of the United States and by extension its agency CMS. Beyond engaging an expert who falsified evidence in this matter and failing to take appropriate steps once that fraud was exposed, the Court should also hold Relator "accountable for the acts and omissions of [his] chosen counsel," as the law requires. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397 (1993); *Nelson v. Boeing Co.*, 446 F.3d 1118, 1121 (10th Cir. 2006) (referring to "the rule that parties are responsible for the acts of their attorneys"). Relator's counsel produced a fraudulent expert report on Relator's behalf, disregarded their own professional obligations in doing so, and continued to flout their obligations once Defendants exposed the fraudulent report.

**V. Defendants' Motion for Sanctions Was Timely.**

Defendants' motion was timely and was filed immediately once Defendants obtained the supporting facts. Defendants certainly were entitled to depose Mr. Dawson to learn the origins of the fabrications, the facts surrounding his suspected AI use, and the extent of Relator's counsel's involvement. Defendants moved to exclude Mr. Dawson's testimony within a week of his deposition and moved for sanctions a week after Relator filed his response. (Dkts. 282, 285, 291.)

## CONCLUSION

Defendants respectfully request disqualification of Mr. Griffith and Mr. Mark, their respective firms, and Relator, along with an award of Defendants' attorneys' fees and costs.[13]

[13] Relator's opposition does not dispute that the Court should at least award fees and costs.

Dated this 10th day of September 2025.

Respectfully submitted:

COHNE KINGHORN, P.C.

/s/ Stephen T. Hester
Stephen T. Hester (#9981)
111 E. Broadway, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 363-4300
shester@cohnekinghorn.com

BASS BERRY & SIMS PLC

/s/ Matthew M. Curley
Matthew M. Curley (*admitted PHV*)
Scott D. Gallisdorfer (*admitted PHV*)
21 Platform Way South, Suite 3500
Nashville, Tennessee 37203
Telephone: (615) 742-6200
mcurley@bassberry.com
scott.gallisdorfer@bassberry.com

*Attorneys for Defendants Mountain West Anesthesia, LLC, David A. Debenham, M.D., Eric A. Evans, M.D., Joshua J. Larson, M.D., and Tyler W. Nelson, M.D.*

SPENCER FANE LLP

/s/ Rodney R. Parker
Rodney R. Parker (#4110)
Richard Van Wagoner (#4690)
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 521-9000
rrparker@spencerfane.com
rvanwagoner@spencerfane.com

*Attorneys for Defendant John E. Miner, M.D.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2025, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Joel A. Ferre
UNITED STATES ATTORNEY'S OFFICE
DISTRICT OF UTAH
111 S. Main Street, Suite 1800
Salt Lake City, Utah 84111
joel.ferre@usdoj.gov

Brandon J. Mark
Hannah J. Ector
PARSONS BEHLE & LATIMER
201 S. Main Street, Suite 1800
Salt Lake City, Utah 84111
bmark@parsonsbehle.com
hector@parsonsbehle.com

Lynn M. Adam
ADAM LAW LLC
One Decatur Town Center
150 E. Ponce de Leon Avenue, Suite 225
Decatur, Georgia 30030
ladam@lynnadamlaw.com

Robert A. Griffith
75 State Street, Suite 100
Boston, Massachusetts 02109
robert@ragriffithlaw.com

Tejinder Singh
SPARACINO PLLC
1920 L Street NW, Suite 835
Washington, District of Columbia 20036
tejinder.singh@sparacinopllc.com

Rodney R. Parker
Richard Van Wagoner
SPENCER FANE LLP
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
rrparker@spencerfane.com
rvanwagoner@spencerfane.com

/s/ Matthew M. Curley